# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 1562 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| VILLAGE OF DOLTON, an Illinois | ) | |
| Municipality; ROBERT FOX | ) | |
| individually, and in his official capacity | ) | |
| as Police Chief; and ROBERT SHAW, | ) | |
| individually, and in his official capacity | ) | |
| as Inspector General of Village of Dolton, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

David Graham, a former police officer for the Village of Dolton, has sued the Village of Dolton, Robert Fox in his individual and official capacity as Police Chief, and Robert Shaw in his individual and official capacity as Inspector General, for their alleged violations of Title VII and 42 U.S.C. §§ 1981 and 1983. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided herein, the Court grants in part and denies in part the motion.

## Facts

David Graham, a Caucasian male, began working at the Village of Dolton as a police officer in 2002. (Compl. ¶ 1.) On or near June 9, 2008, Police Sergeant Curtis Rempson, Graham's supervisor, began to refer to him and other Caucasian police officers as "white boys." (*Id.* ¶ 15.) Police Sergeant Rempson continued to refer to Graham as a "white boy" through May 2009, when Graham filed his charge with the Equal Employment Opportunity Commission

("EEOC"). (*Id.* ¶ 16.) Since June 15, 2008, plaintiff alleges that Police Chief Robert Fox ("Fox") refused to give him overtime assignments and, instead, gave such assignments to less-qualified African-American police officers. (*Id.* ¶ 17.) On August 20, 2008, Fox asked Graham in the presence of Inspector Michael Signator, "why don't you like locking up niggers like them white boys in Riverdale? You're [sic] kind has been doing it for over 500 years." (*Id.* ¶ 18.)

In 2008, Graham was the only Caucasian member of the Village of Dolton's tactical squad. (*Id.* ¶ 20.) On August 22, 2008, Fox said at a staff meeting "this is a predominantly African-American department, with the exception of you white speckles." (*Id.* ¶¶ 10, 19.) Then, at the same meeting, Fox told Graham that he was no longer allowed to wear black gloves like the other tactical squad officers because he was "not black" and "was not in the projects." (*Id.* ¶ 21.) After the meeting, Graham complained to Sergeant Spigalone about Fox's comments and glove mandate, but neither he, nor defendant Shaw, investigated or acted on the complaint. (*Id.* ¶ 25.) Subsequently, Graham complained about Fox's actions to Inspector Signator, who replied: "[Y]ou need to get a lawyer for that one. I'm your witness." (*Id.* ¶ 27.)

In late fall of 2008, Graham applied for a promotion to the South Suburban Major Crimes Task Force. (*Id.* ¶ 28.) Fox denied Graham's application and offered the promotion to a less-qualified, African-American officer. (*Id.*) Sometime prior to December 1, 2008, Graham applied for another promotion to the South Suburban Emergency Response Team, and Fox again denied his application and offered the promotion to a less-qualified African-American officer. (*Id.* ¶ 29.) On December 11, 2008, Fox walked into a meeting between Graham and two other Caucasian officers and said, "what is this, a Klan meeting?" (*Id.* ¶ 31.) Fox has also denied Graham other work-related awards, while giving them to less deserving African-American applicants. (*Id.* ¶ 32.) In January 2009, Police Sergeant Lacy, who is African-American, called

Graham a "white speckle" in the presence of Graham's watch commander. (*Id.* ¶ 33.) On March 22, 2009, Fox demoted Graham from the tactical unit to the patrol unit after learning that Graham intended to file a charge of discrimination with the EEOC. (*Id.* ¶ 34.)

In 2009, plaintiff filed an EEOC charge alleging that defendants discriminated and retaliated against him based on race. (Defs.' Mot., Ex. B, EEOC Charge at 2.) The EEOC issued plaintiff a right-to-sue letter on December 30, 2009. (Compl., Ex. A.) On March 9, 2010, plaintiff filed the complaint in this case asserting claims of race discrimination and retaliation in violation of Title VII and §§ 1981 and 1983.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations in plaintiff's complaint, drawing all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint should give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id.* at 555, 570.

Plaintiff concedes that the punitive damage claims against the Village of Dolton should be dismissed from Counts I and V. (Pl.'s Resp. Defs.' Mot. 2); *see City of Newport v. Fact Concert, Inc.*, 453 U.S. 247, 271 (1981) (holding that municipalities and government officials sued in an official capacity are immune from liability for punitive damages). Graham also concedes that the Title VII claims against Fox and Shaw in their individual capacities should be

dismissed from Counts I, II and V.  (Pl.'s Resp. Defs.' Mot. 4); *see Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998) (holding that Title VII does not impose individual liability on employees and other agents of employer).  The Court, therefore, dismisses these claims with prejudice.  Additionally, any claims against Fox and Shaw in their official capacities are to be treated as a suit against the Village of Dolton.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  Thus, the Court dismisses the official capacity claims as redundant of those asserted against the Village.

## A.    Title VII

### 1.    Disparate Impact

Defendants first argue that plaintiff's disparate impact claim under Title VII is outside the scope of his EEOC charge. Generally, a plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.  *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).   Accordingly, a plaintiff can pursue claims not included in his EEOC charge only if they are "like or reasonably related" to those in the charge, and can be reasonably expected to grow out of an EEOC investigation of the claims in the charge.  *Id.*

In his EEOC charge, plaintiff alleges that Fox made a series of derogatory comments to or about Graham and other white officers and treated African-Americans officers more favorably.  (Defs.' Mot., Ex. B, EEOC Charge at 2.)[1]   In other words, plaintiff alleges that defendants intentionally discriminated against him because of his race.

---

[1] The Court can consider plaintiff's EEOC charge even though it was attached to defendants' motion to dismiss without converting it to a summary judgment motion since it was referred to in plaintiff's complaint and is central to his claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Here, plaintiff also raises a claim of disparate impact discrimination. Plaintiff argues that his disparate impact claim is "like or reasonably related" to the intentional discrimination claims in his EEOC charge because he alleges "nothing was done" when he complained about discrimination. (*Id.*) That allegation, plaintiff argues, is tantamount to alleging that defendants have a "custom and practice" of ignoring discrimination complaints. The Court disagrees. The EEOC charge does not state or suggest that defendants do not investigate any complaints of discrimination. Rather the charge alleges that defendants did not investigate his complaints because he is white. Because the charge does not even remotely suggest that plaintiff was raising a disparate impact claim, that claim is not reasonably related to those in his charge. *See Carr v. Potter*, No. 02 C 5273, 2003 WL 21542470, at *4 (N.D. Ill. July 3, 2003) (holding that disparate impact claim was not reasonably related to other claims in charge where no facially-neutral employment practice was alleged); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 570-71 (W.D. Wash. 2001) (holding that disparate impact claim was not reasonably related to disparate treatment claim because original charge alleged only that plaintiff had individually been the victim of discrimination); *Murray v. John D. Archbold Mem'l Hosp., Inc.*, 50 F. Supp. 2d 1368, 1380-82 (M.D. Ga. 1999) (holding that disparate impact claim was not allowed when original charge alleged only individual discrimination).

Further, plaintiff also alleged in his EEOC charge that he was demoted in retaliation for his impending discrimination claim. A claim of disparate impact, however, is also not reasonably related to a claim of retaliation where no policy or practice is implicated. *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (finding that a claim of disparate impact is not reasonably related to a claim of retaliation); *McKinney v. Eastman Kodak Co.*, 975 F. Supp. 462, 466-67 (W.D.N.Y. 1997) (holding that disparate impact claim was not exhausted when

plaintiff's charge alleged only that she had been discharged in retaliation for complaining and did not mention any process by which firm made its termination decisions).  Accordingly, the Court dismisses without prejudice the disparate impact claim plaintiff asserts in Count I.

### 2.    Retaliation

#### a.  Protected Activity

In Count V, the plaintiff alleges that the Village of Dolton retaliated against him in violation of Title VII.  A claim of retaliation can be made under either the direct or indirect method.  Under the direct method, a plaintiff must allege that (1) he engaged in protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two.  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  Under the indirect method, plaintiff must allege that (1) he engaged in protected expression; (2) he reasonably met his employer's expectations in relation to his job performance; (3) he suffered an adverse employment action; and (4) no similarly situated employee who did not file a discrimination charge, was subjected to an adverse employment action.  *Id.*

The Village of Dolton argues that plaintiff has failed to state a claim of retaliation because neither his "intent to file" an EEOC charge, nor his complaints to his superiors about Fox's alleged discrimination, is protected activity under Title VII.  Protected activity under Title VII includes *opposing* any practice made unlawful by Title VII or making a charge, testifying, assisting, or *participating* in any manner in an investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a) (emphasis added).  Although the Seventh Circuit has not decided this issue, other courts have found that an employee's stated intention to file an employment discrimination charge is protected activity.  *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d

Cir. 1997) (holding that plaintiff engaged in protected activity when she told her supervisor she intended to file an EEOC claim); *Croushorn v. Bd. of Tr. of Univ. of Tenn.*, 518 F. Supp. 9, 21 (M.D. Tenn. 1980) (holding that plaintiff engaged in protected activity where employer learned of his intention to file a claim of discrimination).  Further, courts have held that complaining about an employer's conduct to a supervisor is protected expression if the plaintiff can show a "sincere and reasonable" belief that the challenged actions of the employer violated Title VII. *Hamner v. St. Vincent Hosp.*, 224 F.3d 701, 706-07 (7th Cir. 2000); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  Therefore, the Court finds that plaintiff has sufficiently alleged that he engaged in protected expression to satisfy the pleading requirements under *Twombly*.

### b.     Causal Connection

Defendant argues that plaintiff has not sufficiently alleged the causal element of his retaliation claim because he did not allege that "but for" filing an EEOC charge, the Village would not have taken the adverse employment action.  Although plaintiff does not directly allege that he was demoted and not promoted because of his impending EEOC charge, that is a reasonable inference from his allegations.  Therefore, the Court denies the Village's motion to dismiss Count V.

### C.     Section 1983

Defendants argue that plaintiff has failed to allege a § 1983 claim against Fox and Shaw. To state a claim under § 1983 the plaintiff must allege that (1) the conduct complained of was

committed by a person acting under the color of state law; and (2) the conduct deprived the person of rights secured by the Constitution. *West v. Atkins*, 437 U.S. 42, 48 (1988); *see Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (stating that the plaintiff must specifically identify the constitutional provision under which he has chosen to proceed). Further, to impose individual liability under § 1983, a plaintiff must allege that the defendant caused or participated in a constitutional deprivation. *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). This requirement is satisfied if the defendant acts or fails to act with deliberate or reckless disregard for plaintiff's constitutional rights, or if such conduct occurs at the defendant's direction or with his knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

First, defendants contend that plaintiff's § 1983 claim against Fox and Shaw fails because he did not allege a specific constitutional violation. Here, plaintiff alleges that he was subject to race discrimination, which constitutes a violation of the equal protection clause of the Fourteenth Amendment. *Wood v. Chi. Bd. of Educ.*, No. 97 C 4742, 1998 WL 832656, at *4 (N.D. Ill. Nov. 20, 1998) (holding that plaintiff sufficiently alleged equal protection violation under § 1983 where he alleged that defendants refused to act on his behalf because of his race). Therefore, the Court denies the motion to dismiss these claims on this basis.

Second, defendants argue that plaintiff's § 1983 claim against Shaw in his individual capacity fails because he did not allege that Shaw, the Village's Inspector General, personally engaged in any discriminatory action against plaintiff. Plaintiff alleges that Shaw never instituted or investigated his complaints of discrimination because he was Caucasian, and therefore Shaw's inaction violated his rights. (Compl. ¶ 26.) But plaintiff fails to allege that Shaw deliberately or recklessly disregarded his complaints, or that Shaw personally participated

in the alleged constitutional deprivation (*i.e.*, the decisions to demote or not promote plaintiff).

*See Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (affirming motion to dismiss a §

1983 claim for failure to allege a defendant's personal responsibility for constitutional

violations). Further, there is no allegation that Shaw worked with Fox, or ever witnessed Fox's

behavior, such that he knew of and consented to Fox's behavior. Therefore, the Court dismisses

without prejudice Count IV as it pertains to Shaw.


**D.     Sections 1981 & 1983**

Defendants argue that plaintiff has failed to sufficiently allege a discrimination claim

under §§ 1981 and 1983 against Fox and the Village of Dolton. To state a reverse discrimination

claim under §§ 1981 and 1983 a plaintiff must allege that (1) the defendants intended to

discriminate on the basis of race; (2) the defendants' activities concern the making, performance,

modification, termination, conditions or benefits of a contract; and (3) that there are background

circumstances sufficient to demonstrate that the particular employer has reason or inclination to

discriminate invidiously against whites or . . . that there is something fishy about the facts at

hand." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 820-21 (7th Cir. 2006) (internal

quotations omitted); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Additionally, to allege liability against a municipality under §§ 1981 and 1983 the

alleged constitutional violations must be caused by one of the municipality's policies. *Monell v.

Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) (holding that municipalities can be held

liable under § 1983 only when "official policy [is] the moving force of the constitutional

violation"); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (applying the

municipality policy rule in *Monell* to § 1981). A policy, in this context, means (1) an express

policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that is

so permanent and well settled as to constitute a custom or usage with the force of law; or (3)

action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319,

324 (7th Cir. 2000).


### 1.      Fox in his Individual Capacity

Defendants argue that plaintiff has not adequately pleaded facts that show Fox has a

reason or inclination to discriminate against whites in violation of §§ 1981 and 1983.  In *Hague*,

the court held that Caucasian plaintiffs had sufficiently demonstrated reverse discrimination to

survive a summary judgment motion by providing evidence that they were fired from a position

by an African-American supervisor, and replaced by African-Americans.  *Id.* at 822.  Similarly

here, although in a Rule 12(b)(6) context, plaintiff has alleged that his African-American

supervisor refused to give him overtime assignments and promotions, while providing such

opportunities to less-qualified African-American officers.   (Compl. ¶¶ 17, 28-29.)  Under the

reasoning in *Hague*, these allegations alone are sufficient to allege a claim of reverse

discrimination.

In this case, however, there are even more facts to support such a claim including:  (1)

Fox's saying at a staff meeting that "this is a predominantly African-American department, with

the exception of you white speckles" and telling plaintiff, the only Caucasian member of the

tactical team, that he was no longer allowed to wear black gloves like all the other team

members because he was "not black" and "was not in the projects" *(id.* ¶¶ 16, 19, 21); (2)

Village of Dolton Police Sergeant Curtis Rempson's referring to Graham and other Caucasian

police officers at the Village of Dolton as "white boys" (*id.* ¶ 15); (3) Fox's asking Graham in

the presence of Inspector Michael Signator, "why don't you like locking up niggers like them white boys in Riverdale? You're [sic] kind has been doing it for over 500 years." (*id.* ¶ 18); and (4) on December 11, 2008, Fox walking into a meeting between Graham and two other Caucasian officers and saying, "what is this, a Klan meeting?" (*id.* ¶ 31). These background circumstances are even stronger than those in *Hague* to show that Fox has an inclination to discriminate invidiously against Caucasians. As a result, this Court finds that Graham has pleaded background circumstances sufficient to maintain a claim of reverse discrimination under §§ 1981 and 1983. Therefore, defendants' motion to dismiss the claims asserted against Fox in Count III and Count IV is denied.

### 2.    Village of Dolton

Defendants argue that plaintiff's §§ 1981 and 1983 claims against the Village of Dolton must be dismissed because plaintiff does not allege that the Village had a policy that violated his constitutional rights. Plaintiff does not allege that the Village has an express policy of discrimination. However, he contends that he has sufficiently alleged a widespread practice of discrimination, which can be inferred from his allegations that the discrimination by Fox was "consistent with the Village of Dolton's *de facto* policy of discrimination," which is "espoused by top city officials who have influence and control over the police department." (Compl. ¶ 58.) The Court disagrees. To allege a widespread practice, plaintiff must offer some facts that support the inference that policymaking officials knew about and acquiesced to the practice. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1986). Further, a plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). A plaintiff's

own isolated experiences, however, are insufficient to state a claim for municipal liability under a custom theory. *Nebel v. City of Burbank*, No. 01 C 6403, 2003 WL 1606087, at *6 (N.D. Ill. Mar. 27, 2003); *Wyrick v. City of Chi.*, No. 99 C 4777, 2001 WL 293082, at *2 (N.D. Ill. Mar. 26, 2001). Because Graham alleges nothing but his own isolated, personal experiences, he does not allege a widespread practice or custom of discrimination by the Village of Dolton.

That leaves only the third option for alleging municipal liability, that a person with final policymaking authority caused his constitutional injury. Plaintiff alleges that Fox is the final policymaker who caused his injury. Whether an official has final policymaking authority is a question of state law. *Radic v. Chi. Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). Under Illinois law, the Board of Police Commissioners has final policymaking authority with regard to police department employment decisions. 65 ILL. COMP. STAT. 5/10-2.1-1. Thus, unless the Board delegated its authority to Fox, he is not a final policymaker. *Jett*, 491 U.S. at 737 (stating that final policymaking authority may be granted directly by a legislative enactment or may be delegated by an official with such authority). Here, there are no allegations of delegation of authority in plaintiff's complaint. Therefore, the Court dismisses without prejudice plaintiff's §§ 1981 and 1983 claims against the Village of Dolton.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [doc. no. 8]. The motion is granted as to: (1) the punitive damage claims asserted in Counts I and IV against the Village of Dolton and Fox and Shaw in their official capacities, which are dismissed with prejudice; (2) the Title VII claims asserted in Counts I, II and V against Fox and Shaw in their individual capacities, which are dismissed with prejudice;

(3) the claims asserted against Fox and Shaw in their official capacities as redundant of those asserted against the Village of Dolton, which are dismissed without prejudice; (4) the Title VII disparate impact claim asserted in Count I against the Village of Dolton, Fox and Shaw, which is dismissed without prejudice; (5) the §§ 1981 and 1983 asserted in Counts III and IV claims against the Village of Dolton and Shaw, which are dismissed without prejudice. The remaining claims in this suit are: (1) the Title VII retaliation and failure to hire and/or promote claims asserted in Counts I, II and V against the Village of Dolton; and (2) the §§ 1981 and 1983 claims asserted in Counts III and IV against Fox. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend the claims dismissed without prejudice in accordance with this Order. If plaintiff fails to do so in that time, the Court will dismiss those claims with prejudice.

      **SO ORDERED**                **ENTER: January 6, 2011**

 

_Ronald A. Guzman_

_____

    **RONALD A. GUZMAN**
    **District Judge**